**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                  :
KELLY LAMOND, for herself         :
and for a class of persons        :
similarly situated,               :
                 Plaintiffs,      :     Civil No. 06-3043 (RMB)
                                  :
          v.                      :     **OPINION**
                                  :
PEPSICO, INC., et al.,            :
                                  :
                 Defendants.      :
_____  :


Appearances:

Jamie L. Sheller, Esquire
Sheller, Ludwig & Badey, PC
One Greentree Centre
10000 Lincoln Drive East, Suite 201
Marlton, New Jersey 08053
(856) 988-5590
     Attorney for Plaintiff

Kimberly A. Aponte, Esquire
Sheller, Ludwig & Sheller, PC
1528 Walnut Street, Third Floor
Philadelphia, Pennsylvania 19102
(215) 790-7300
     Attorney for Plaintiff

Scott T. Tross, Esquire
Herrick, Feinstein, LLP
One Gateway Center, 22nd Floor
Newark, New Jersey 07102
(973) 274-2000
     Attorney for Defendant Pepsico, Inc.

Kristen E. Polovoy, Esquire
Montgomery, McCracken, Walker & Rhoads
457 Haddonfield, Road
Cherry Hill, New Jersey 08002
(856) 488-1700
     Attorney for Defendant Sunny Delight Beverages Company

**BUMB**, United States District Judge:

## I.  Introduction

     This matter comes before the Court upon the Court's <u>sua</u>
<u>sponte</u> inquiry regarding subject matter jurisdiction.  Shortly
after the Defendants removed this class action Complaint to this
Court, and prior to any responsive pleadings being filed, six of
the ten Defendants either settled with or were dismissed by the
Plaintiff, Kelly Lamond (the "Plaintiff").  The remaining
Defendants -- having sought and obtained continuances to file
their responsive pleadings -- filed a joint motion to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(6) in lieu of
answers.  During the pendency of the motion to dismiss, two other
Defendants either settled or were dismissed by Plaintiff.   Only
two Defendants, Pepsico ("Pepsico") and Sunny Delight Beverage
Company ("Sunny Delight"), remain.  Pepsico and Sunny Delight are
collectively referred to as the "Defendants".

     During the pendency of the Defendants' motion to dismiss,
questions were raised in this Court's mind regarding its
jurisdiction to hear this case.  The Court informed the parties
of its concern and requested the parties to brief the issue.  In

2

their papers, the Defendants argue in support of this Court's jurisdiction.  Plaintiff, however, seeks a remand of her case to the Superior Court.

For the reasons set forth below, this Court finds that the Defendants have failed to carry their burden of proving that this Court has jurisdiction.  Accordingly, a remand is proper.

## II.  <u>Procedural History</u>

The Plaintiff, Kelly Lamond, filed a "Class Action Complaint" in the Superior Court of New Jersey for Camden County on May 24, 2006.  Lamond filed the Complaint "for herself and on behalf of a class of all persons in New Jersey who, within the past four years, purchased beverages with the tendency to contain benzene."  <u>See</u> Pl.'s Compl. at ¶ 1.  She asserted claims against Defendants Pepsico, Inc., Kraft Foods, Inc., Cadbury Schweppes Americas, Meridian Beverage Company, The Coca-Cola Company ("Coca-Cola"), Faygo Beverages, Inc., Giant Food Stores, LLC, Safeway, Inc., Sunny Delight Beverages Company, and Talking Rain Beverage Company.  In the Class Action Complaint, Plaintiff averred that "there [was] a reasonable likelihood that the recovery in [the] case [would] exceed $15,000," and that the "class [was] composed of thousands of members."  <u>See</u> Pl.'s Compl. at ¶ 48.

On July 6, 2006, Coca-Cola removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.  At the

time of the removal, the Plaintiff had not effected valid service of process upon any of the Defendants.  Consequently, no responsive pleadings had been filed in the Superior Court.  In its removal petition, Coca-Cola alleged that (1) the class involved more than 100 members based upon Plaintiff's assertion that the class was composed of "thousands of members;" (2) that there was minimal diversity because Plaintiff was a citizen of New Jersey and Coca-Cola was a citizen of Delaware and Georgia; and (3) that, based upon the allegations in the Complaint, the claim of the proposed class members exceeded $5,000,000 in the aggregate.  Thus, Coca-Cola alleged that this Court had jurisdiction pursuant to 28 U.S.C. § 1332(d).

On July 31, 2006, Plaintiff and all named Defendants entered into an agreement to extend the time to file answers to the Class Action Complaint until September 27, 2006.  On September 27, 2006, the Plaintiff served the Summons and Complaint on each Defendant.[1]

On October 6, 2006, Plaintiff filed an Amended Complaint, labeled "First Amended Class Action Complaint" (the "Amended Complaint").  The Amended Complaint asserted claims against only

---

[1]  Plaintiff voluntarily dismissed its case as to Cadbury Schweppes on August 4, 2006, and as to Talking Rain Beverage Company on September 11, 2006.

4

Pepsico, Kraft Foods, Coca-Cola, and Sunny Delight.[2]  The
Plaintiff had either settled with the remaining original
Defendants or was in the settlement process with others.  <u>See</u>
Pl.'s Br. at 5.  In her Amended Complaint, Lamond defined the
class in the same manner as the initial Complaint, but limited
the class number to "at least hundreds, if not thousands of
members."  <u>See</u> Pl's Amended Complaint at ¶ 28.  Unlike the
original Complaint, which merely stated a likelihood of recovery
of greater than $ 15,000, the Plaintiff did not set forth any
amount in her amended pleading.

On November 10, 2006, Defendants Pepsico, Sunny Delight, and
Coca-Cola filed a joint Motion to Dismiss in lieu of answers.[3]

## III. <u>Plaintiff's Claims</u>

Plaintiff, on behalf of herself and those similarly
situated, complains that the Defendants manufactured and sold
beverages that had a "tendency" to contain benzene.  <u>See</u> Pl.'s
Compl. at ¶ 1.  The benzene was allegedly formed by the
interaction of two ingredients, a preservative and an acid.  When
the beverages were exposed to heat or light these two ingredients
formed benzene.  <u>See</u> Pl.'s Compl. at ¶ 18.  Plaintiff alleges that

---

[2]  On May 14, 2007, the Plaintiff dismissed her case against
Coca-Cola.

[3]  During the pendency of the Motion to Dismiss, Plaintiff
settled with Kraft Foods (December 13, 2006) and Coca-Cola (May
14, 2007).

Defendants knew that their beverages could form benzene under certain conditions, but nevertheless continued to manufacture and sell beverages with the preservative and acid formulations. <u>See</u> Pl.'s Compl. at ¶ 20.  They did so, Plaintiff alleges, without disclosing this issue to the consumer.

Notably, Plaintiff does not allege any physical or emotional injury or harm of any kind (i.e., non-economic harm) to herself or any putative class member whatsoever.   Nor does she allege that the Food and Drug Administration (the "FDA") has prohibited the sale of such beverages. <u>See</u> Pl.'s Compl. at ¶ 19.  Rather, she alleges that the FDA has urged the beverage industry to prevent the formation of benzene in beverages, but the Defendants nonetheless have sold and continue to sell beverages with the above formulations.  Had she known of the purported tendency to contain benzene, she would not have purchased these beverages. <u>See</u> Pl.'s Compl. at ¶ 68.

In sum, Plaintiff's Complaint alleges the following causes of action:

- **Count 1**: Breach of [Implied] Warranty;
- **Count II**: New Jersey Consumer Fraud Act, <u>N.J. Stat. Ann.</u> 56:8-1 <u>et seq.</u>;
- **Count III**: Unjust Enrichment;
- **Count IV**: Willful and Wanton Misconduct.

Plaintiff seeks damages equal to the amounts paid for the products, an injunction, treble damages, disgorgement of profits, benefits and other compensation that Defendants received from the

sale along with attorneys fees, costs and punitive damages.

**IV.  The Court's _Sua Sponte_ Inquiry Regarding Its Jurisdiction**

On May 1, 2007, the Court conducted a telephone conference with the parties and informed them of its concerns regarding jurisdiction. Federal courts are under a "continuing obligation to investigate their jurisdiction over the matters before them." Golden ex rel. Golen v. Golden, 382 F.3d 348, 354 (3d Cir. 2004); Huber v. Taylor, No. 02-304, 2007 U.S. Dist. LEXIS at * 30 (W.D. Pa. Apr. 27, 2007) ("[e]ven if no party raises the issue, the district court may take the initiative and probe the sufficiency with which the amount in controversy has been pled."). See also Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76-77 (3d Cir. 2003)("courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. . . . A necessary corollary is that the court can raise _sua sponte_ subject-matter jurisdiction concerns."). This obligation extends to class action complaints as well. See Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 397-98 (3d Cir. 2004)(before reaching the issue of class certification, the Court examined subject matter jurisdiction of which it was dubious and therefore remanded to the District Court with guidance).[4] Even though

---

[4] More specifically, the Third Circuit found that the record was inadequate for determining the amount in controversy. The District Court had adopted the purchase price of the car as the overriding factor in determining the amount in controversy but no allowance had been made "for the value of the car with the

7

Plaintiff did not move for a remand after removal in this case,[5] this Court remains obliged to examine its jurisdiction at every stage of the proceeding.  See Smith v. Evans, 853 F.2d 155, 157 (3d Cir. 1988).

**V.  Legal Analysis**

    A.  Amount in Controversy

Under the Class Action Fairness Act ("CAFA"), a plaintiff may bring a class action in federal court when (1) the plaintiff alleges there are 100 or more members in the purported class; (2) the plaintiff, as putative class representative, has a different citizenship from at least one defendant; and (3) the amount in controversy exceeds the sum or value of $5,000,000 in the aggregate, exclusive of interest and costs.  See 28 U.S.C. § 1332(d).

Here, the first two elements are not in dispute.  Plaintiff alleges more than 100 members in the purported class (i.e., "in the thousands").  She also alleges the minimal diversity

---

defect, nor was any reduction made for the Plaintiff's use of the vehicle." Samuel-Bassett, 357 F.3d at 394.

    [5]  It is interesting that the Plaintiff did not file a timely motion to remand but yet now seeks a remand only after the Court raised the issue.  Of course there could be several reasons why the Plaintiff decided not to seek a timely remand, but those reasons, whatever they might be, are not relevant to this Court's inquiry.

requirement.[6]  The third element under section 1332(d)  -  the
requisite $5 million amount in controversy – is vigorously
disputed by the parties.

    1.  *Burden of Proof is on the Defendants*

    Under CAFA, "the party seeking to remove the case to federal
court bears the burden to establish that the amount in
controversy requirement is satisfied." <u>Morgan v. Gay</u>, 471 F.3d
469, 473 (3d Cir. 2006).  The parties do not dispute that the
Defendants bear the burden of proof.  Rather, they dispute the
burden of proof standard.

    2.  *Defendants Must Prove Amount to a Legal Certainty*

    Plaintiff argues that the Defendants can only discharge
their burden if they demonstrate "to a legal certainty" that the
amount in controversy is more than $ 5 million.  Defendants,
however, argue that they face a lesser burden here because the
Complaint does not affirmatively set forth an amount less than $5
million.  (Although the Defendants do not articulate what that
standard is, presumably they prefer the preponderance of the
evidence standard).

    A review of case law in this area reveals some confusion as
to the appropriate burden of proof.  Some courts have focused on
the language used in the initial pleading.  The question posed is

---

    [6]  Plaintiff alleges that she is a citizen of New Jersey.
Coca-Cola is a citizen of Delaware.

whether or not the plaintiff affirmatively limited her damages to less than $5 million or filed an ambiguous, open-ended complaint without specifying the amount.  When the plaintiff fails to plead a specific amount of damages, the removing defendant must prove the amount in controversy by a "preponderance of the evidence." Lowdermilk v. United States Bank National Assoc., 479 F. 3d 994, 998 (9th Cir. 2007); Lowrey v. Ala. Power Co., Nos. 06-16324 & 06-16325, 2007 U.S. App. LEXIS 8289 (11th Cir. Apr. 11, 2007). See also Abrego Abrego v. The Dow Chemical Co., 443 F. 3d 676, 685 (9th Cir. 2006)(per curiam).  If the complaint alleges damages in excess of the $5 million, then the requirement is presumptively satisfied unless it appears to a "legal certainty" that the claim is actually for less than the jurisdictional minimum.  Id. at 683 n.8.  If the plaintiff alleges damages less than $5 million, the removing party must prove with "legal certainty" the CAFA requirement.  Lowerdermilk, 479 F. 3d at 996. (resolving the question the court reserved in Abrego Abrego).

Other courts, notably the Third Circuit, have focused on whether or not the facts relevant to resolving the amount in controversy question are in dispute.  If the facts are in dispute, the removing party must first establish the facts before the Court by a preponderance of the evidence.  Once the Court has made its preliminary findings, or assuming the facts were not in dispute in the first instance, the burden on the removing party

becomes one of legal certainty.  The Third Circuit explained this
in Samuel-Bassett, as part of its guidance in determining the
amount in controversy.[7]  It also explained the source of the
confusion among the courts.

> The Supreme Court has discussed the nature of a
> defendant's burden of proof in a removal case [based on
> diversity of citizenship.]  In St. Paul Mercury
> Indemnity Co. v. Red Cab  Co., 303 U.S. 283 (1938), the
> plaintiff, in seeking a remand to the state court,
> amended the complaint after removal to allege damages
> less than the federal jurisdictional amount.  The Court
> stated that the rule for determining whether the case
> involves the requisite amount is whether "from the face
> of the pleadings, it is apparent, to a legal certainty,
> that the plaintiff cannot recover the amount claimed,
> or if, from the proofs, the court is satisfied to a
> like certainty that the plaintiff never was entitled to
> recover that amount."  Id. at 289.  If not, the suit
> must be dismissed. ... In many cases ... disputes over
> factual matters may be involved.  In resolving those
> issues, the McNutt [General Motors Acceptance Corp. of
> Indiana, 298 U.S. 178 (1936)] preponderance of the
> evidence standard would be appropriate.[8]  Once findings
> of fact have been made, the court may determine whether
> Red Cab's "legal certainty" test for jurisdiction has
> been met. ... In short, despite the use by some courts
> of such phrases as "more likely than not, "substantial
> likelihood," and "reasonable probability," we recommend
> that when the relevant facts are not in dispute or
> findings have been made the District Courts adhere to

---

[7]  This approach makes practical sense.  It is the removing
party who has all the necessary information to demonstrate the
amount in controversy. "When the defendant has vital knowledge
that the plaintiff may lack, a burden that induces the removing
party to come forward with the information – so that the choice
between state and federal court may be made accurately – is much
to be desired."  Brill v. Countrywide Home Loans Inc., 427 F.3d
446, 447-48 (7th Cir. 2005).

[8]  In McNutt, the Supreme court held that "the party
alleging jurisdiction [must] justify his allegations by a
preponderance of evidence."  McNutt, 298 U.S. 178, 189 (1936).

the "legal certainty" test.

Samuel-Bassett, 357 F. 3d at 397-98.  See also Huber v. Taylor, No. 02-304, 2007 U.S. Dist. LEXIS 31131 at * 30 (W.D. Pa. Apr. 27, 2007)("The party wishing to establish subject matter diversity of citizenship jurisdiction has the burden to prove to a legal certainty, at all stages of the litigation, that the amount in controversy exceeds the statutory threshold"); Davis-Giovinzazzo Constr. Co. v. Tatko Stone Products, No. 06-1270, 2007 U.S. Dist. LEXIS 28571 at * 9 n.7 (E.D. Pa. Apr. 18, 2007)("Samuel-Bassett clarified that district courts in the Third Circuit should adhere to the phrasing 'legal certainty' when considering challenges to the amount in controversy"); Howard v. Allstate Ins. Co., No. 06-4017, 2006 U.S. Dist. LEXIS 71915 at * 4-5 (E.D. Pa. Sept. 28, 2006)("Defendant incorrectly states that the Third Circuit is split on the process by which a defendant establishes the amount in controversy for diversity jurisdiction purposes. In 2004, the Third Circuit directly addressed the issue.  After surveying the different standards applied by district courts, the court determined that 'it would be helpful if consistent language were used by the District Courts within the Circuit' and adopted Meritcare's[9] test of 'legal certainty' when relevant facts are not in dispute.").

The legal certainty test states that "[w]hen it appears to a

---

[9] See discussion of Meritcare, infra.

legal certainty that the plaintiff [is not] entitled to recover the minimum amount set by Section 1332, the removed case must [be] remanded even if the jurisdictional deficiency becomes evident only after trial." Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999). If facts are in dispute, the court should apply a preponderance of the evidence standard to determine the facts and then apply the legal certainty test to ascertain jurisdiction. Samuel-Bassett, 357 F.3d at 398.

Here, the parties do not dispute the facts argued by the Defendants to establish jurisdiction, such as the amount of beverages sold or the average prices of the sodas.[10] Rather, Plaintiff takes issue with the conclusions that the Defendants draw from those facts. Accordingly, because the relevant facts are not in dispute, this Court holds that the Defendants must prove the requisite amount in controversy, $5 million, to a legal certainty.

3.  *Amount in Controversy at the Time of Removal*

Plaintiff urges this Court to look at the amount in controversy at this current stage of the litigation. Plaintiff cites to several cases for the proposition that the Court may

---

[10]  Plaintiff does take issue, however, with the paucity of information contained in the declarations, as well as their conclusory statements. For the reasons articulated below, these criticisms go to the heart of Defendants' failure to meet their burden of proof.

consider developments that have occurred in the case after the
date of removal, and not be strictly bound to the allegations at
the time of removal.[11]  See Pl.s' Br. at 11.  Certainly this
argument has appeal in this case because of the Plaintiff's
dismissal of most of the defendants shortly after the removal,
thus, substantially altering the case from its initial stages.
This Court agrees with Defendants, however, that it must look to
the removal petition.  See Morgan, 471 F.3d at 474 (citing Brill,
427 F.3d at 449).  Looking to the allegations at the time of the
removal, this Court finds that the Defendants have failed to meet
their burden to a legal certainty.

    4.  *Failure of Proofs*

    In Morgan v. Gay, the Third Circuit gave three main
instructions in analyzing the amount in controversy.  First, the
party wishing to establish subject matter jurisdiction has the
burden to prove to a legal certainty that the amount in
controversy exceeds the statutory threshold.  Second, a plaintiff
may limit her monetary claims to avoid the threshold.  Third,
even if a plaintiff states that her claims fall below the

---

    [11] The Court notes, however, that there is a distinction
between "subsequent developments" and "subsequent revelations."
See, e.g., Huber, 2007 U.S. Dist. LEXIS, at * 36 ("the
'distinction must be made between subsequent events that change
the amount in controversy and subsequent revelations, that, in
fact, the required amount as or was not in controversy at the
commencement of the action.'")(citing State Farm Mutual Auto
Insurance Co. v. Powell, 87 F. 3d 93, 97 (3d Cir. 1996)).

threshold, the court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, "irrespective of whether the plaintiff states that the demands do not." Morgan, 471 F. 3d at 474-75. A court's task is to examine the dollar figure offered by the plaintiff, if any, as well as her actual claims. Id.

As detailed above, Plaintiff does not offer any dollar figure, other than to allege that the amount in controversy is likely to exceed $ 15,000, a far cry from the $5 million required. Plaintiff seeks an award for damages incurred over the four years preceding the filing of the complaint. Plaintiff seeks damages equal to the amount she paid for the beverages, treble damages under the Consumer Fraud Act, an injunction enjoining the continued advertising and sale of the offending products, and disgorgement of profits. She also seeks the imposition of punitive damages.

Based on these demands, Defendants submit two Declarations to establish the $5 million threshold. Specifically, Pepsico submits a Declaration of David Hammer, the Vice-President of Finance for Pepsi-Cola Company North America. In his Declaration, Hammer explains that Pepsico sells raw material concentrate to independent bottlers throughout the United States who turn that raw material concentrate into finished products such as Diet Wild Cherry Pepsi. The finished soft drinks are put

15

into familiar containers - 12 ounce cans, 20 ounce bottles, and 2
liter bottles - and sold to consumers through various retail
outlets.  Hammer reviewed the bottler case sales information for
Diet Wild Cherry Pepsi in New Jersey for the four years preceding
the filing of the within Complaint.[12]  He took the "actual unit
sales and applied estimated retail selling prices for the
respective packages in New Jersey for this time period."  See
Hammer Declaration at 2.  According to Hammer, the retail sales
in New Jersey for Pepsico's Diet Wild Cherry Pepsi totaled more
than $6 million in the four years prior to the Complaint.

Defendant Sunny Delight's proofs are even less detailed.
Sunny Delight's Director of Quality, Regulatory & Technology, Joe
Buechel, states that, "Sunny Delight's beverage sales through
their licensed bottler who distributed the Sunny Delight Citrus
Punch about which Plaintiff complains, in New Jersey, from
October, 2005, through June, 2006, the time period during which
the Citrus Punch previous formula contained benzoate, amounted to
approximately $600,000."  See Declaration of Joe Buechel at ¶2.
The Court is given no information regarding estimates on how many
beverages were sold and how much consumers paid for said items.

Defendants contend that because the Plaintiff's theory is
that the tendency to contain benzene, whether realized or not, in

---

[12] Diet Wild Cherry Pepsi is the only Pepsico beverage
alleged by Plaintiff to have the tendency to contain benzene.

any given can or bottle, renders the soft drink unmerchantable, the $6.6 million of sales is the operative number and, thus, more than sufficient to establish the amount in controversy of $5 million.  In addition to this amount, they argue that the amounts, based on products sold by other party defendants in the initial Complaint would clearly involve an amount greater than $5 million.  The Defendants, however, offer no information regarding the other defendants' sales of beverages that supposedly had the benzene problem.  Therefore, inclusion of such amounts would be based on pure conjecture (and unreliable as discussed <u>infra</u>).

Even considering the affidavits submitted showing estimated retail <u>sales</u> of $6.6 million, the Defendants' sole reliance on the gross sales in New Jersey over the last four years fails to establish the statutory minimum of $5 million.  Defendants erroneously contend that the $6.6 million is the relief Plaintiff seeks because she is seeking a "full refund" for each bottle. This reading is incorrect as it implies that Plaintiff's pleadings are dispositive of the amount in controversy.  The Third Circuit clearly rejected such a stance in <u>Morgan</u>, when it stated that "plaintiff's pleadings are not dispositive under the legal certainty test" and instead stated that the Court must look to plaintiff's "actual legal claims."  <u>Morgan</u>, 471 F.3d at 475.

In examining the actual legal claims, this Court finds that the amount in controversy does not equal the amount of retail

sales as Defendants vigorously contend.  In Count 1, Plaintiff asserts a claim for breach of implied warranty of merchantability.  While Plaintiff may indeed be asking for a "refund"[13] the law governing the claim at issue makes clear that the amount one is entitled to equals the amount paid for the product <u>less</u> the value of the product received.  <u>See</u> N.J. Stat. Ann. 12A:2-714 (stating that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...."); <u>see</u> <u>DeRose v. Hunter Lindsay Corp.</u>, 41 N.J. Super. 178 (1956)(stating that the prior analogous statute was the proper measure of damages for breach of implied warranty).[14]

---

[13] Interestingly, the body of Plaintiff's Complaint states that she seeks "amounts paid for the products" and "restitution" ¶¶ 62, 70.  However, in her prayer for relief, she omits these requests and merely requests "damages."

[14] Indeed, Plaintiff concedes that "there must be some deduction made for the value of the product she received in computing the amount of damages." <u>See</u> Pl.'s Br. at 9-10 ("Although the plaintiff does not concede that the value of the products she got from the defendants was as much as she paid, there must be some deduction made for the value of the product she received in computing the amount of damages.").
This Court is aware, however, that a "plaintiff's stipulation subsequent to removal as to the amount in controversy or the types of relief sought is of 'no legal consequence' to the court's determination." <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 667 (3d Cir. 2002).  That being said, this Court must keep in mind that the ultimate determination regarding the amount in controversy requires a "reasonable reading of the value of the rights being litigated." <u>Angus v. Shiley,</u> 989 F.2d 142, 146 (3d Cir. 1993).  A reasonable reading of the value of the rights

Defendants, in an attempt to utilize sales as the operative number, obscure the issue by citing inapposite case law where a refund was available in a case of contract rescission.  Plaintiff is not seeking recission of a "contract" here, and while she may have styled her claim as one for a refund, a request notably absent from her prayer for relief, the legal vehicle by which she has brought that claim requires a deduction for the amount of value received, an amount that has yet to be established here. See Samuel-Bassett, 357 F.3d at 399 (discussing, under the Pennsylvania Consumer Protection law, the price of items as starting point and from which amounts are deducted to arrive at actual damages).[15]

---

being litigated requires this Court to look at the theories of recovery asserted by the Plaintiff.  In this case, each theory requires a subtraction for the value received by the Plaintiff - a value that reasonably exists in light of Plaintiff's complaint which fails to allege any non-economic injury or that she was unable to consume the products.

Additionally, this Court notes that while contained in the body of the Complaint, Plaintiff's requests for a refund of the purchase price are absent from her prayer for relief.  Arguably the absence of these items from the prayer for relief indicates that Plaintiff's current contention, that the items at issue did indeed have value, can be considered as "clarifying rather than amending the complaint" in the face of ambiguity.  See Angus, 989 F.2d 142, 145 n.3 (3d Cir. 1993) (discussing distinction between explaining and amending a claim).  However, the Court need not reach this because a reasonable reading of the claims at issue reveals that a deduction for value must be made.

[15] Notably, the Third Circuit in Samuel-Bassett recognized in dicta that the panel deciding Werwinski v. Ford Motor Co., 286 F.3d 661, 667 (3d Cir. 2002), was not made aware of two Superior Court cases interpreting relevant aspects of the Consumer Protection Law that required "the purchase price of a vehicle as

As the Third Circuit held in <u>Morgan v. Gay</u>, there must be a
broad good faith requirement with respect to the amount in
controversy.  <u>Morgan</u>, 471 F.3d at 474.  Thus, the good faith
requirement should not only apply in the filing of the complaint,
but in the removing of a case to federal court as well.  As the
Third Circuit stated, good faith is "entwined with the legal
certainty test." <u>Id</u>. at 474.  What this means then is that even
though Plaintiff alleges that the beverage was not merchantable,
both parties must recognize that there was at least some value to
the beverage, <u>e.g.</u> it quenched the thirst, etc.  This is so
especially in light of the fact that Plaintiff admits that (1)
she consumed the beverages, (2) she got a value/benefit from
doing so, and (3) she <u>suffered no non-economic injury</u>.  Moreover,
Plaintiff has not alleged that every beverage sold contained
benzene, but merely had the potential to form benzene under
certain conditions.  Thus applying the legal certainty/good faith
symbiont, Defendants cannot meet their burden of proof by simply
citing to their retail sales.

Of course, what the value of the beverage is in reality is
quite speculative and Defendants offer no evidence regarding this
issue.  But surely Defendants must believe that Plaintiff, who
alleges no non-economic injury, received some value (most likely,

---

a starting point for calculating damages" form which various sums
must be deducted to arrive at the actual damages.  <u>See</u> <u>Samuel-
Bassett</u>, 357 F.3d at 400.

the value she paid for the beverage).  The Defendants, however, have not made any such deduction from the $6.6 million sales figure.[16]

The above shortcomings also apply to Plaintiff's claim under the Consumer Fraud Act (Count II).  Although the Plaintiff seeks treble damages under the Consumer Fraud Act, this Court is without any information to ascertain what amount of damages would be trebled, as discussed above.  To recover under the Consumer Fraud Act, Plaintiff must demonstrate an ascertainable loss. N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 176 (N.J. App. Div. 2003).  "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle[.]"  Thiedemann v. Mercedes-Benz USA, 183 N.J. 234, 247 (2005).  Again, as discussed above, a fair reading of the complaint in conjunction with the good faith pleading requirement dictates that an appropriate deduction must be made from the sales figure provided by Defendants.  At this juncture the Court

---

[16]   The irony here is that it is the Defendants who are seeking federal jurisdiction by claiming that the amount in controversy exceeds $5 million.  Yet, Defendants' entire defense, even assuming the veracity of Plaintiff's allegations, is that the beverages were fit for consumption and that the Plaintiff received the value of her bargain.  In other words, there was no loss.  This Court understands the "Catch-22" that the Defendants are in: they want to establish jurisdiction via retail sales and yet are loath to concede that Plaintiff received no or a lesser value from their products.

has no notion of what that amount might be.  Cf., International Union of Operating Engineers Local # 68 Welfare Fund v. Merck, 384 N.J. Super. 275, 291 (App. Div. 2006) (stating that "plaintiff can prove ascertainable loss by classwide expert opinion").

Because this Court has no basis for determining the actual loss, it cannot conceive of what damages it would be trebling, if any. Samuel-Bassett, 357 F.3d at 403 (stating that "estimations of the amounts recoverable must be realistic" and that "[t]he inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts."). Again, this Court will not engage in such speculation when dealing with the basis for its jurisdiction.

Additionally, under Count III for Unjust Enrichment, the Plaintiff seeks "restitution" in the form of an order requiring the Defendants to "disgorge. . . all profits, benefits and other compensation derived from the sale" of the products at issue. Pl.'s Complaint, at ¶70. As such, the profits sought by her cannot extend any further than the profits derived from the sales of Diet Wild Pepsi, Sunny Delight Citrus Punch, as well as the other alleged offending beverages of the other defendants to the New Jersey class members (of which there is no evidence). The Defendants felt it unnecessary to "break out a percentage profit from sale in New Jersey during the class period, because the

amount in controversy requirement is met based upon the other claims." Defs.' Br. at 9.  Thus, the Court has no basis for assessing profits here.  Just as in <u>Morgan</u>, Defendants have failed to present evidence to a legal certainty that the net profits from the sales to the class members exceeded $5 million. The Defendants have offered only evidence relating to all gross retail sales in New Jersey for two products.

Finally, although Plaintiff also seeks punitive damages (Count IV), the Defendants have not put forward what possible exposure exists with respect to punitive damages when Plaintiff is not alleging <u>any</u> non-economic injury.  This deficiency is identical to what occurred in <u>Morgan</u> where the Third Circuit stated that: "the District Court accurately noted that the defendants do not state what sort of punitive damages could be found when no harmful side effects are being alleged."  <u>Morgan</u>, 471 F.3d at 475.  Thus, with regard to punitive damages the <u>Morgan</u> Court held that "the defendants simply failed to prove what possible exposure existed with respect to punitive damages so as to satisfy any portion of the $5 million amount in controversy requirement.")  <u>Id.</u> at 475.  Again, this Court has been given no information regarding possible exposure to punitive damages in this case where no non-economic injury has been

alleged.[17]

## VI.  Conclusion

For the aforementioned reasons, this Court holds that
Defendants have not satisfied their burden that the amount in
controversy exceeds the requisite $5 million dollars.  The Court
only has gross sales figures (and a dearth of evidence as to how
those figures were computed) and no assessment of value to be
deducted.  Further there is no evidence of profits and no
assessment of punitive damages exposure.  Without said
information, the amount in controversy is unclear, and, as such,
Defendants have not carried their burden of proving the amount in
controversy to a legal certainty.  Therefore, this Court does not
have jurisdiction over this matter.  The above-captioned matter
will be remanded to the Superior Court for the State of New
Jersey, Camden County, and, in light of remand, Defendants'
pending motion to dismiss and Plaintiff's motion to strike are
denied as moot.

An accompanying Order will issue this date.

Dated: June 8, 2007                      s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         United States District Judge

---

[17] Additionally, Plaintiff seeks injunctive relief.
Normally the amount of such relief is determined "by the value of
the object of the litigation." Columbia Gas Transmission Corp.
v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995)(quoting Hunt v.
Washington Apple Advertising Comm'n, 432 U.S. 333, 347 (1977)).
This Court can make no assessment of such value here as
Defendants have offered no evidence of the same.